## MORROW v. ASHER.
### No. 4292.

District Court, N. D. Texas, Dallas Division.
Jan. 9, 1932.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, Tex., for the motion.

John W. West, of Dallas, Tex., opposed.

ATWELL, District Judge.

This suit originated in the state court. It was brought by a citizen of Texas against a citizen of California, and it is alleged that, "on or about January 29th, 1931, one E. E. McNey was the agent, servant and employee, of Alfred Asher, and was in his usual course of business, and was carrying on the business of his employer, the said Alfred Asher, and on said date was operating a car owned by the said defendant and was using the highways of the state of Texas for the purpose of transporting a car from Texas to California." It was then alleged that McNey carelessly and negligently drove the automobile into the car of the plaintiff, inflicting serious and permanent injuries upon plaintiff. There were other allegations touching the rate of legal and illegal speed and lookout. Thirty thousand dollars damages are asked.

Service was had under section 2039a of the Revised Statutes of the state of Texas (added by Acts 41st Leg. (1929), c. 125 [Vernon's Ann. Civ. St. art. 2039a]), which reads, in part, as follows: "The acceptance by a non-resident of this State of the rights, privileges and benefits of the public highways * * * as evidenced by his operating a motor vehicle or motorcycle on any such public highway * * * shall be deemed equivalent to an appointment by such non-resident of the Chairman of the State

Highway Commission of this State, or his successor in office, to be his true and lawful attorney upon whom may be served all lawful process in any civil action or proceeding against him growing out of any accident or collision in which said non-resident may be involved while operating a motor vehicle * * * on such public highway * * * and said acceptance or operation shall be a signification of his agreement that any such process against him which is so served shall be of the same legal force and validity as if served upon him personally. Service of such process shall be made by leaving a copy of the process in the hands of the Chairman of the State Highway Commission of Texas, or at his office, and such service shall be sufficient service upon the said non-resident; provided that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff to the defendant, and the defendant's return receipt and the plaintiff's affidavit of compliance herewith are appended to the return of the officer serving such process upon the Chairman of the State Highway Commission. The Court in which the action or proceeding is pending may order such continuances as may be necessary to afford the defendant reasonable opportunity to defend the action."

Appearing merely for that purpose, the defendant moves to quash the service, and contends that the statute means exactly what it says. That he was not "operating" a motor vehicle at the time of the alleged injury to the plaintiff.

If the statute means that the use of the Texas highways by a servant, or an employee, renders the employer, or principal, liable for a tort committed by such servant or employee, to be served in the manner indicated, then this motion should be overruled. If it only means that the person who actually operates the car at the time of an alleged tort could be so served, then and in that event the motion should be sustained.

The case of Hess v. Pawloski, 274 U. S. at page 355, 47 S. Ct. 632, 633, 71 L. Ed. 1091, reviews briefly and pointedly the state of the law with reference to the service of process of a court of one state upon one not domiciled therein. Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Goldey v. Morning News, 156 U. S. 518, 15 S. Ct. 559, 39 L. Ed. 517; McDonald v. Mabee, 243 U. S. 90, 37 S. Ct. 343, 61 L. Ed. 608, L. R. A. 1917F, 458; Flexner v. Farson, 248 U. S. 289, 39 S. Ct. 97, 63 L. Ed. 250.

The constitutional right (Const. art. 4, § 2) of a citizen of one state "to pass through, or to reside in any other state for purposes of trade, agriculture, professional pursuits, or otherwise," Hess v. Pawloski, supra, and the prohibition of state legislation discriminating against the citizens of other states, must be harmonized with the right of a state to exercise and enforce regulations reasonably calculated to promote care on the part of "residents and nonresidents alike, who use its highways," in propelling dangerous motor vehicles. The rapidity with which the motor-driven vehicle passes from state to state, and from point to point, and the extreme hardship of requiring the damaged citizen within such territory to follow the operator into other jurisdictions, is sufficient ground for the new method of service approved in that case.

Thereafter the Supreme Court, in Wuchter v. Pizzutti, 276 U. S. 13, 48 S. Ct. 259, 72 L. Ed. 446, 57 A. L. R. 1230, held that a New Jersey statute which had no provision making it reasonably probable that notice of such service would be communicated to the defendant, was lacking in due process of law.

It will be noted that the Texas statute predicates the appointment by the nonresident of the chairman of the state highway commission, as his attorney, upon whom service may be had, upon "his operating a motor vehicle on the highway." The word "operate" means to "work or use a machine; to perform some manual act, or series of acts; to keep a machine working or in operation." New Century.

When used in the intransitive, it means to have or produce a desired result; to act effectively; to effect any result. Union Tank Line Company v. Richardson, 183 Cal. 409, 191 P. 697. Under Hours of Service Act (45 USCA §§ 61–66), "operated," means more than "kept open." U. S. v. Boston and Maine (D. C.) 265 F. 800.

A father who signed an application for his daughter's license to operate an automobile was held liable for injuries to pedestrian while the daughter allowed another to drive car; since the daughter was "operating" car within the statute, and was primarily responsible jointly with driver; the court there holding that "operate" means to direct or superintend, while to drive means to impel motion and quicken. Bosse v. Marye, 80 Cal. App. 109, 250 P. 693.

One who steps on starter is operating automobile. State v. Webb, 202 Iowa, 633,

210 N. W. 751, 49 A. L. R. 1389. "Operate" signifies personal act in working the mechanism of car. Feitelberg v. Matuson, 124 Misc. Rep. 595, 208 N. Y. S. 786.

When the driver at time of accident was being directed by owner when and where and how often to drive, it was held that the automobile was not being "operated" by the owner within a policy covering liability incurred only while automobile was being operated by owner, since word "operate" is used to signify the personal act of working the mechanism of the car. Witherstine v. Employers Liability, 235 N. Y. 168, 139 N. E. 229, 28 A. L. R. 1298.

A truck which had temporarily stopped on the highway with intention to continue in a few seconds was being "operated" within a law requiring automobiles to carry lights when in operation during certain times of the day. Horton v. Benson (Tex. Civ. App.) 266 S. W. 213.

A car which was being towed was not being "operated" at the time of a collision therewith. Dewhirst v. Connecticut Co., 96 Conn. 389, 114 A. 100.

Of course, these and many other decisions are shaded somewhat by the particular language of the state statute, or of the contract under consideration. But, when a lawmaking body passes a statute which, because of necessity, subjects a person to a liability to which he was not theretofore subject, the statute should be strictly construed. This was recognized by the courts of Texas in that line of cases which grew out of legislation that overturned the common-law rule that no right of action existed to recover damages for injuries resulting in the death of the injured. Perry v. Arguelles et al. (Tex. Civ. App.) 246 S. W. 760; Rodgers v. Tobias (Tex. Civ. App.) 225 S. W. 804. The act creating such liability did not mention the acts of agents of natural persons, and the principal could not be held under the statute. Hence the Legislature amended the act so as to create such a liability.

To require the defendant here to answer for the act of McNey, there must be a finding that McNey was the agent. Concededly Asher was not operating the car in the sense that he was actually driving it. Differ as we may about the scope of the word "operate," there is highly respectable authority, both in dictionary and in court decisions, to the effect, as already shown, that operation means the actual handling of the machinery. If Asher was not operating in that sense upon the Texas highway, he could not be served by a notice upon the chairman of the highway commission. To hold that such notice was service upon him under the present facts would be to read into the law what the Court of Appeals of New York refused to read into the New York statute in the case of O'Tier v. Sell, 252 N. Y. 400, 169 N. E. 624, 625.

The New York statute, section 285-a, Highway Law (now Vehicle and Traffic Law [Consol. Laws, c. 71; Laws 1929, c. 54] § 52), is almost identical with the Texas statute. There are some minor differences, in that the notice may be had upon the secretary of state. But the word "operation" is used in that statute as it is in the Texas statute. "We have said that 'the word "operate" is used throughout the statute (Highway Law) as signifying a personal act in working the mechanism of the car. The driver operates the car for the owner, but the owner does not operate the car unless he drives it himself.'" Judge Lehman, speaking for that court in the same case, also said: "We are asked by construction to read into the words 'while operating a motor vehicle' an additional clause, 'or while the car is being operated with his permission, express or implied.' That we may not do."

It may be conceded that these distinctions are not easily appreciated by those who do not see the importance of strictly reading the written law, but, where a law is plain, unambiguous, and explicit in its terms, the exceptions are few indeed that authorize a court to read something into it that the law writers did not themselves put therein.

The case of Poti v. New England Road Machinery Company, 83 N. H. 232, 140 A. 587, a New Hampshire case, is not in line with the New York case last above quoted, but it seems to me that it would be dangerous to do otherwise than to follow the words of the statute. There is no reason why, if the Legislature sees fit, the statute may not be extended so as to include servants and employees.

It follows that the motion to quash the service must be sustained.