84 N.J. Super. 178 (1964)
201 A.2d 387
DAVID WEBB, JR., PLAINTIFF,
v.
STANKER AND GALETTO, INC., ET AL., DEFENDANTS-THIRD-PARTY PLAINTIFFS-APPELLANTS,
v.
U.S. PLYWOOD EXPORT CORP., ET AL., THIRD-PARTY DEFENDANTS, AND EARTH MOVERS INC., THIRD-PARTY DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1964.
Decided June 11, 1964.
*179 Before Judges GAULKIN, FOLEY and LEWIS.
Mr. Jay H. Greenblatt argued the cause for Earth Movers, Inc., respondent (Messrs. Greenblatt & Greenblatt, attorneys).
*180 Mr. Augustine A. Repetto argued the cause for Stanker and Galetto, Inc., et al., appellants.
No appearance for any other party.
The opinion of the court was delivered by GAULKIN, S.J.A.D.
Stanker and Galetto, Inc., a New Jersey corporation (hereafter Stanker), filed a third-party complaint against Earth Movers, Inc., a Delaware corporation. Earth Movers was served by certified mail, pursuant to R.R. 4:4-4(d). The trial court granted Earth Movers' motion to set aside the service, and Stanker appeals.
The motion was heard on affidavits. The following facts appear from the pleadings and affidavits.
In 1960 U.S. Plywood entered into a contract with Hastings and Eskridge, general contractors, for the construction of a warehouse in Seaford, Delaware. Hastings and Eskridge contracted with Earth Movers to do the filling, grading and blacktopping about the building. Hastings and Eskridge abandoned the contract because of the death of Hastings, and Stanker contracted with U.S. Plywood to complete the job as general contractor. Stanker's agent went to the office of Earth Movers, in Seaford, and arranged for Earth Movers to do the filling, grading and blacktopping as Stanker's subcontractor. Earth Movers prepared a writing setting forth the work to be done, at a price of $8,000, and mailed it in duplicate to Stanker's office in Vineland, N.J. Stanker signed one copy "Accepted" and returned it, by mail, to Earth Movers. Earth Movers then did the work it proposed to do, and Stanker paid it the $8,000 by checks mailed from Vineland.
Stanker subcontracted the painting of the warehouse to Webb Construction Company, Inc., a Delaware corporation. Plaintiff David B. Webb, Jr. (hereafter Webb), a resident of Seaford and an employee of Webb Construction Company, was injured while engaged in painting the warehouse.
*181 Webb instituted an action in the Superior Court, Law Division, Cumberland County, against Stanker and its officers individually, for damages. His complaint alleged that he fell from a scaffold mounted on a motor truck because the wheels of the truck sank "into loose earth * * * that had been deposited * * * at the instance and direction * * *" of defendants. Webb charged that Stanker and its officers were liable for his injuries because:
"9. It became and was the affirmative duty of the corporate defendant to employ competent supervisors and overseers; to see that the said scaffold was maintained in a proper and horizontal position so that the same would not tilt or tip over; to see that the firmament upon which the truck would necessarily rest was of sufficient rigidity, thickness and strength to bear, sustain and support the weight of the truck and its scaffolding so that it would have a secure footing; to furnish the plaintiff with a safe place to work; to properly inspect and make certain that the work area and its ways and approaches that were assigned to him were in reasonably safe condition; to alert and warn the plaintiff of a hazard then and there existing in an imminently dangerous condition, and which was not open, patent or visible to plaintiff; to faithfully and fully comply, as required, with the statutes of the State of Delaware, viz: the provisions of Title 16 of the Delaware Code Annotated (1953), in such case made and provided and dealing with the health, safety and welfare of laborers, such as the plaintiff; and properly to supervise and direct the work of the plaintiff, which it had undertaken to do and to furnish such devices as to reasonably have guarded him against injury."
Stanker made no motion to dismiss the complaint on the ground of forum non conveniens. Cf. Vargas v. A.H. Bull Steamship Co., 44 N.J. Super. 536 (Law Div.), affirmed 25 N.J. 293 (1957); "Developments in the Law: State-Court Jurisdiction," 73 Harv. L. Rev. 909, 1012-1013 (1960). It filed an answer denying liability, and a third-party complaint against U.S. Plywood and Earth Movers. The allegations of the third-party complaint against U.S. Plywood have no bearing on the issue before us. As against Earth Movers the third-party complaint alleges in substance that (to quote the affidavit of Stanker's counsel): "* * * it was Earth Movers, Inc., in fulfillment of their contract to place fill in the area surrounding the erection on the premises, who would or *182 should be chargeable with the negligence claimed by plaintiff to have caused the accident and Earth Movers, Inc. would accordingly be liable by way of indemnification or at least as a joint tort feasor."
Earth Movers had no contact with New Jersey except as above set forth. As its brief says: "* * * It is a family corporation which is not and has never been authorized to do business in New Jersey nor has it ever filed an application for the purpose of being authorized to do business in New Jersey. Its officers never have and do not own property, real or personal, within the borders of New Jersey. It does not nor has it ever owned property, real or personal, in New Jersey. It does not manufacture products for sale in New Jersey, and it has never sold anything in the State of New Jersey. It has no agents or representatives in the State of New Jersey, and never had any agents or representatives in New Jersey. It has no office or place of business in New Jersey. It does not nor has it ever solicited business by mail, advertisement or otherwise in New Jersey. It never had nor does it now have a mailing service for the purpose of soliciting business. It never has and it does not now advertise in any magazine, newspaper or other periodical for the purpose of soliciting or obtaining business. The only place in which the name appears is in the yellow pages of the Lower Delaware telephone directory, and at times the name of the corporation appears on periodicals sponsored by local charitable organizations, such as churches. It never has nor does it now have a telephone or other listing anywhere in the State of New Jersey. Earth Movers, Inc. never did any business in New Jersey nor did it perform any service in New Jersey at any time prior to the happening of the accident in this cause." And, of course, the contract was to be performed in Delaware, the accident happened in Delaware, and Webb is a resident of Delaware.
Judge Arthur L. Joseph held that these facts "fail to establish the necessary minimum contacts in New Jersey on the part of Earth Movers, Inc., a Delaware corporation, to *183 give this Court jurisdiction over said corporation by service of process under R.R. 4:4-4(d)." We agree.
Stanker's able brief argues that the trend of the law is to expand in personam jurisdiction over foreign corporations, and that our R.R. 4:4-4(d) was adopted to enable our courts to exercise that jurisdiction as far as due process of law will allow. With this we agree, but, as the Supreme Court said in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283, 1296 (1958):
"* * * the requirements for personal jurisdiction over non-residents have evolved from the rigid rule of Pennoyer v. Neff, 95 U.S. 714. 24 L.Ed. 565, to the flexible standard of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 [161 ALR 1957]. But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, 77 S.Ct. 1360, 1362, 1 L.Ed.2d 1456 [1459]. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the `minimal contacts' with that State that are a prerequisite to its exercise of power over him."
In McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), plaintiff's son had purchased a life insurance policy in 1944 from Empire Mutual Insurance Company, an Arizona corporation. In 1948 defendant, a Texas corporation, assumed Empire Mutual's obligations. Defendant mailed a reinsurance certificate to the son in California and offered to continue his insurance. The son accepted the offer and thereafter mailed the premiums from California to defendant in Texas until 1950, when he died.
Neither Empire Mutual nor defendant ever had an office or agent in California. There was no evidence that defendant ever solicited or did any other insurance business in California.
In 1949 California passed a statute which subjected foreign corporations to suit in California on insurance contracts with *184 residents of that state even though such corporations could not be served with process within its borders. Pursuant to that statute, plaintiff served defendant by registered mail addressed to its Texas office. Defendant entered no appearance in the action and judgment went against it in California by default. Plaintiff then sued on the judgment in Texas, but the Texas courts refused to enforce the judgment holding it was void because service of process outside California could not give the courts of California jurisdiction. The Supreme Court reversed, saying:
"[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.' * * * It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State. Cf. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Henry L. Doherty & Co. v. Goodman, 294 U.S. 623, 55 S.Ct. 553, 79 L.Ed. 1097; Pennoyer v. Neff, 95 U.S. 714, 735, 24 L.Ed. 565, 573. The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died. It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable. When claims were small or moderate individual claimants frequently could not afford the cost of bringing an action in a foreign forum  thus in effect making the company judgment proof. Often the crucial witnesses  as here on the company's defense of suicide  will be found in the insured's locality." 355 U.S., at pp. 221-224, 78 S.Ct., at p. 201, 2 L.Ed.2d, at pp. 225-226
Stanker argues that this case is on all fours with McGee  the contract with Earth Movers was made in New Jersey when Stanker accepted Earth Movers' proposal; the payments on account of the contract were mailed from New Jersey; and our R.R. 4:4-4(d) is the equivalent of the California statute.
We do not agree that the holding in McGee applies to all contracts. As the author of the note in 73 Harv. L. Rev. 909, *185 supra, says at p. 928: "The furthest extension of jurisdiction based on an isolated contract has been in the insurance field. * * * There are several factors present which explain the extended jurisdiction in these cases, although the more extreme results may not appear justifiable on an interest analysis. First, the Supreme Court has long recognized a unique state interest in insurance contracts. Second, in selling the policy to an out-of-state plaintiff the insurance company asserts its ability and willingness to investigate and pay claims within the forum. Finally, litigation is a normal part of the insurance company's business and should be regarded as a cost of making a profit within the forum."
In Hanson v. Denckla, supra, 357 U.S., at pp. 252-253, 78 S.Ct., at p. 1239, 2 L.Ed.2d, at p. 1297, Chief Justice Warren said:
"* * * This case is also different from McGee in that there the State had enacted special legislation (Unauthorized Insurers Process Act) to exercise what McGee called its `manifest interest' in providing effective redress for citizens who had been injured by nonresidents engaged in an activity that the State treats as exceptional and subjects to special regulation."
Furthermore, here Stanker's third-party complaint was not upon the contract. The contract did not provide for indemnification or contribution or that Earth Movers was to carry insurance. Stanker was being sued for its own faults, including an alleged violation of a Delaware statute.
If Webb had not sued Stanker, and Stanker sued Earth Movers in New Jersey on the contract, it seems to us that our courts would not be able to obtain in personam jurisdiction over Earth Movers with service by mail. Earth Movers' contacts with New Jersey were not enough to permit such service under the standards presently laid down in the decisions of the United States Supreme Court cited above and our own courts. See also Rosenberg Brothers & Co. v. Curtis Brown Co., 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923).
Stanker argues that "Retaining jurisdiction of Earth Movers Inc. avoids multiplicity of suits * * *," and that *186 Earth Movers would not be inconvenienced by appearing in our courts, Seaford being close to Bridgeton, the county seat of Cumberland County. That may be true, but the fact that Webb's action makes our courts the most convenient ones for the disposition of all of the issues in the litigation and that it would not be inconvenient for Earth Movers to appear here may not be accepted as a substitute for the constitutional necessity of "`minimal contacts' with that State that are a prerequisite to its exercise of power over" it. Hanson v. Denckla, supra.
The judgment is affirmed.